JAY SMITH (CA Bar No. 166105)
(Email: js@gslaw.org)
JOSHUA F. YOUNG (CA Bar No. 232995)
(Email: jyoung@gslaw.org)
NICOLE GRINSTEIN (CA Bar No. 320889)
(Email: ngrinstein@gslaw.org)
**GILBERT & SACKMAN**
**A LAW CORPORATION**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000
Fax: (323) 937-9139

*Attorneys for Plaintiffs Louis Butel*
*and Pam Mocherniak*

[Additional counsel listed on the next page]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOUIS BUTEL and PAM MOCHERNIAK, individually and on behalf of all similarly situated current and former employees,<br><br>Plaintiffs,<br><br>v.<br><br>MARATHON REFINING AND LOGISTICS SERVICES LLC, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:23-cv-04547-DSF-JPR<br><br>Hon. Dale S. Fischer<br><br><u>CLASS ACTION</u><br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>1. Failure to Pay Reporting Time Pay (Lab. Code § 218; IWC Wage Order 1-2001; 8 C.C.R. § 11010;);<br>2. Failure to Pay for Travel Time (Lab. Code § 218, 218.5, 1194; and 1199; Wage Order 1-2001; 8 C.C.R. § 11010)<br>3. Failure to Pay All Wages Earned at Termination (Labor Code §§ 200-203);<br>4. Failure to Furnish Accurate Itemized Wage Statements (Lab. Code. §§ 226 and 226.3);<br>5. Liability for Civil Penalties Under the Private Attorneys General Act (Lab. Code § 2698 *et seq.*)<br><br>DEMAND FOR JURY TRIAL |

1   RANDY RENICK (CA Bar No. 179652)
    (Email: rrr@hadsellstormer.com)
2   CORNELIA DAI (CA Bar No. 207435)
    (Email: cdai@hadsellstormer.com)
3   SARAH CAYER (CA Bar No. 334166)
    (Email: scayer@hadsellstormer.com)
4   **HADSELL STORMER RENICK & DAI, LLP**
    128 North Fair Oaks Avenue, Suite 204
5   Pasadena, California 91103-3645
    Telephone: (626) 585-9600
6   Fax: (626) 577-7079

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## **INTRODUCTION**

1.     Louis Butel and Pam Mocherniak ("Named Plaintiffs") bring this action against Defendant Marathon Refining and Logistics Services LLC and other as of yet unnamed Defendants (collectively, "Marathon" or "Defendants"), alleging violations of the California Labor Code. Named Plaintiffs bring this action individually and as a proposed class action on behalf of similarly situated current and former employees who have been employed by Defendants at Marathon's oil refinery, sulfur plant, terminal facilities, lubricants plant, and distribution facilities located in or around Carson and Wilmington, California ("Los Angeles Refinery").

2.     Named Plaintiffs seek class-wide relief under California law for Marathon's breach of its legal obligations to pay reporting time pay, travel time pay, pay all wages earned at termination, and to furnish timely and accurate wage statements, pursuant to California Labor Code §§ 200-203, 218, 226, 226.3, and California Industrial Welfare Commission Wage Order No. 1-2001 ("Wage Order 1-2001"), to its employees at the Los Angeles Refinery.

3.     Named Plaintiffs, suing on behalf of themselves and other aggrieved employees, also seek relief under California's Private Attorneys General Act of 2004, California Labor Code § 2698 *et seq.* ("PAGA").

## **THE PARTIES**

4.     Named Plaintiff Louis Butel is, and at all relevant times was, a competent adult residing in Placentia, California. Butel is and has been employed by Marathon within the State of California and is an "employee" as defined in Wage Order 1-2001. Named Plaintiff currently is employed at Defendant's Los Angeles Refinery.

5.     Named Plaintiff Pam Mocherniak is, and at all relevant times was, a competent adult residing in Carson, California. Mocherniak was employed by Marathon within the State of California and was an "employee" as defined in Wage Order 1-2001. She retired in January 2023 and is no longer employed by Marathon.

SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

6.    Named Plaintiffs bring this action individually and on behalf of the following two classes of individuals (the "putative class members") (collectively, "Plaintiffs"):

Standby Class
All current and former operators of Marathon (or any of its affiliates or successors) who worked at the Los Angeles Refinery, and who have been assigned standby shifts that required them to be ready to answer a telephone and report to the refinery if called, since November 25, 2019.

Travel Time Class
All current and former employees of Marathon (or any of its affiliates or successors) who worked at the Los Angeles Refinery, and who were not paid for time between the time they entered the facility and the time they clocked in for work, and were not paid for time between the time they clocked out and the time they exited the facility, since November 25, 2019.

7.    All putative class members known to Plaintiffs are citizens of California.

8.    Defendant Marathon Refining and Logistics Services LLC is headquartered in Findlay, Ohio, incorporated in Delaware, and does business in California.   It is a "person" as defined by California Labor Code § 18. Defendant Marathon is an "employer" as that term is used in the California Labor Code and Wage Order 1-2001.

9.    Defendant Marathon Refining and Logistics Services LLC has owned and/or operated the Los Angeles Refinery, which includes an oil refinery, sulfur plant, terminal facilities, lubricants plant, and distribution facilities, located in or around Carson and Wilmington, California. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege Doe Defendants' true names and capacities when ascertained.

10.    Plaintiffs are informed and believe and thereupon allege that, at all relevant times, Defendants and each of them, directly or indirectly, or through an agent or any other person, employed and/or exercised control over the wages, hours, and/or working conditions of Plaintiffs, and that Defendants and each of them were the joint employers of Plaintiffs and/or alter egos of each other.

## JURISDICTION AND VENUE

11.     Venue is proper based on the location of work performed by Plaintiffs in Los Angeles County, the location of the Los Angeles Refinery, the performance of various contracts pertaining to working conditions at the Los Angeles Refinery by Defendants in Los Angeles County, as well as the location of the commission of the acts alleged herein in Los Angeles County. The relief requested is within the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

12.     Marathon has employed Plaintiffs and putative class members at its Los Angeles Refinery, consisting of an oil refinery, sulfur plant, terminal facilities, lubricants plant, and distribution facilities located in or around Carson and Wilmington, California (the "Los Angeles Refinery").

13.     This class action challenges the practice of scheduling refinery operators for "standby" shifts but failing to pay required reporting time pay, the practice of requiring refinery employees to walk or find a ride from Marathon's on-site vehicles between the employee turnstiles, where Marathon requires employees to badge in and badge out upon entry and exit, and their designated work units within the refinery, but failing to pay for the travel time between said turnstiles and work units, and the requirement for employees to wait until shortly before their shifts begin, to clock-in at the work unit but failing to pay for the time.

14.     **Standby shifts:** Plaintiffs and the other operators are scheduled for and work 12-hour shifts, during which Marathon uniformly requires them to remain on duty the entire shift. In addition to their regular 12-hour shifts, operators at Marathon's Los Angeles Refinery must regularly be available for designated 12-hour standby shifts twice a day.

15.     Marathon requires operators at its Los Angeles Refinery to be at the ready to receive calls during two 2-hour time periods when assigned to cover standby shifts, which commence 1.5 hours prior to the start of the scheduled standby shift and end 30 minutes after the standby shift has started. If an operator cannot be reached during these 2-hour time periods, the operator is considered absent without leave and is subject to disciplinary

action. If an operator is asked to work the scheduled standby shift during one of the 2-hour time periods, the operator must report for duty at the refinery in Los Angeles within a time period not to exceed 3.5 hours. If an operator is not contacted at all during these 2-hour time periods, the operator is not compensated at all by Marathon, although the operator's activities have been significantly constrained.

16.     These standby shifts impose tremendous costs on these employees. Without the security of a definite work schedule and because Marathon requires employees to be available for standby shifts, workers who must be "on-call" or on "standby" are forced to make childcare arrangements, kin-care arrangements, encounter obstacles in pursuing their education, experience adverse financial effects, and deal with stress and strain on their family life. The "on-call" or "standby" shifts also interfere with employees' ability to obtain supplemental employment in order to ensure financial security for their families. They also cannot commit to social plans with friends or family.

17.     In addition to their scheduled standby shifts, operators at the Los Angeles Refinery must wait to be called one hour prior to the start of each of the two scheduled standby shifts. Consequently, they are inconvenienced not only for the periods of the scheduled standby shifts they must cover, but also for the hour before the standby shifts commence. During this period prior to the start of the standby shift, operators must be at the ready to answer calls, and they cannot do things incompatible with answering a phone call, such as sleeping, taking a class, going camping, or being at any location without cell service including, for example, elevators and numerous rural areas.

18.     Whether or not Marathon ultimately calls an operator on standby shifts and requires the employee to work a standby shift, the operator has still suffered inconvenience and has forgone the opportunity to take-on other work that could have been scheduled for the day or evening, take a class, go camping in an area with limited cell reception, and make out-of-town plans, amongst other restrictions.

19.     In short, the requirement of having to be at the ready for standby shifts and arrive at work if called significantly limits operators' ability to earn other income, take classes, care for dependent family members, and enjoy time for recreation.

20.     Pursuant to its authority under Labor Code § 1773, the Industrial Welfare Commission promulgated Wage Order 1-2001. Wage Order 1-2001 applies to Marathon's Los Angeles Refinery.

21.     Pursuant to Wage Order 1-2001, an employee is entitled to reporting time pay when he or she "is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work." The amount of reporting time pay that must be paid "is half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage."

22.     Notwithstanding Marathon's standby shift policy, Marathon compensates operators only when they are actually required to work during the standby shift. Marathon does not credit its operators at its Los Angeles Refinery for "reporting for work" when the employee is scheduled for a standby shift and is not told that he or she has to work during the standby shift. These practices have resulted, and continue to result, in Marathon not paying its employees required reporting time pay.

23.     **Travel time:** The refinery has several employee entrances. At each employee entrance, there is a turnstile. At the start of each workday, Marathon requires that employees badge-in and walk through the employee turnstiles to enter the refinery. Employees who drive to work must leave their personal vehicles outside of the refinery. Once inside the refinery, Marathon requires employees, including operators and maintenance workers, at the Los Angeles Refinery to wear personal protective equipment ("PPE"), such as hard hats, safety glasses, Flame Retardant Clothing ("FRC"), special footwear, goggles, gloves, hearing protection, and other specialized items such as hydrogen sulfide (H2S) monitors (which are used to monitor exposure to poisonous gas) everywhere inside the refinery, with the exception of very limited areas of the refinery specifically

designated as exempt. Once wearing the appropriate PPE, Marathon further requires that employees travel, while wearing required PPE, to their designated work units, where they clock-in.

24.     Marathon's work rules prohibit employees from using their own transportation to get to and from their work units, so they must either walk, bike, or find a ride on Marathon's on-site vehicles. Marathon requires that employees wear PPE when walking, biking, or riding in a Marathon's onsite vehicles inside the refinery. Employees are subject to discipline for failing to wear required PPE while traveling on foot, by bicycle, or in Marathon's on-site vehicles inside the refinery.

25.     For operators, Marathon does not allow employees to clock-in until several minutes before both the day and night shift, which occurs from 5:00 am/pm to 5:00 pm/am (at the Carson side of the Los Angeles Refinery) or 6:00 am/pm to 6:00 am/pm (at the Wilmington side of the Los Angeles Refinery). Maintenance workers work a day shift but may not clock in until shortly before the shift begins. Employees are not paid for the time spent traveling between the employee turnstiles and their work units, nor are they paid for waiting until shortly before the shift start time to clock-in, nor are they paid for the time spent traveling from back from their work units to the turnstiles after clocking-out.

26.     Marathon maintains records of the times at which employees badge-in and badge-out at the turnstiles each day. Marathon mandates that employees use the turnstiles when entering or exiting the refinery, and requires employees to badge-in and badge-out using company-issued badges. Marathon utilizes these employee badge-in and badge-out records to monitor employee attendance at the refinery. Employees are subject to discipline based on the times that they badge-in and badge-out each day.

27.     Employees are prohibited from smoking, carrying or using alcohol, and carrying weapons while traveling inside the Refinery.

28.     Unlike during their commute times on public streets between their homes and the refinery, employees cannot use the time traveling after entering at the turnstiles to run

errands, stop for breakfast, or carry out other tasks that require the use of their personal vehicles.

29.     When Marathon's employees walk, bike, or ride in a company vehicle to and from their work units on refinery property, all while subject to Marathon's workplace rules and policies including the requirement that they wear PPE, they are subject to Marathon's "control." *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 586.

30.     Therefore, Marathon's employees are entitled to compensation (including overtime wages and penalties) for the "hours worked" spent traveling to and from their work units and waiting to clock-in.

31.     Marathon has not paid, and continues to not pay, its employees for their "hours worked."

32.     **Failure to furnish accurate wage statements:** Marathon also routinely fails to maintain complete and accurate payroll records for Plaintiffs showing, *inter alia*, the gross and net wages earned, including wages for "reporting for work" and wages for the travel time to and from their work units.

**CLASS ALLEGATIONS**

33.     Plaintiffs bring this action on behalf of themselves and the following ascertainable classes of similarly situated persons: (1) <u>Standby Class.</u> All current and former operators of Marathon (or any of its affiliates or successors) who worked at the Los Angeles Refinery, and who have been assigned standby shifts that required them to be ready to answer a telephone and report to the refinery if called, since November 25, 2019; and (2) <u>Travel Time Class.</u> All current and former employees of Marathon (or any of its affiliates or successors) who worked at the Los Angeles Refinery, and who were not paid for time between the time they entered the facility and the time they clocked in for work, and were not paid for time between the time they clocked out and the time they exited the facility, since November 25, 2019.

34.     Plaintiffs reserve the right to modify the description of the classes and to later designate subclasses based on the results of discovery or otherwise.

35.     **Numerosity:** The proposed classes are estimated to include between 400 and 1,000 members. These proposed classes are so numerous that joinder of all such persons is impracticable and the disposition of their claims as a class will benefit the parties and the Court.

36.     **Ascertainability:** The identities of the members of the classes are readily ascertainable by review of Marathon's records, including, but not limited to, payroll records, timekeeping records, schedules, and other documents and other business records that Marathon is required by law to maintain.

37.     **Commonality/Predominance:** There are predominant common questions of law and fact and a coherent community of interest amongst Plaintiffs and the claims of the classes, concerning Marathon's treatment of them, including but not limited to:

        a.     Whether the reporting time pay requirement that an employee "report for work" requires that Plaintiffs and the class physically report for work;

b.   Whether Marathon's requirements that its operators (1) be at the ready to receive a call during a designated standby period; and (2) arrive at work if asked to work a standby shift or face discipline triggers California's reporting time pay obligations;

c.   Whether Marathon's requirements that its operators (1) be at the ready to receive a call during a designated standby period; (2) arrive at work if asked to work the standby shift; and (3) be subject to discipline if they fail to satisfy either requirement violates California policy as expressed by the state legislature's enactment of Labor Code § 96(k) prohibiting discipline for employees engaging in lawful off duty conduct;

d.   Whether the time employees spend traveling between the employee turnstile and their work unit constitutes "hours worked" for which they are entitled to compensation;

e.   Whether Marathon violated and continues to violate Wage Order 1-2001;

f.   Whether Marathon violated Labor Code §§ 200-203; and

g.   Whether Marathon violated Labor Code §§ 226, 226.3

38.   **Typicality**: The claims alleged by Named Plaintiffs herein encompass the challenged practices and common courses of conduct of Defendants and are typical of those claims which could be alleged by any member of the proposed classes. Named Plaintiffs' claims arise out of the alleged courses of conduct by Defendants and are based on the same legal theories as the claims of the putative class members. The legal issues as to which California laws are violated by such conduct apply equally to Named Plaintiffs and the putative class members. Further, the relief sought by Named Plaintiffs is typical of the relief which would be sought by each member of the proposed class if they were to file separate actions.

39. **Adequacy of Representation:** Named Plaintiffs are proper representatives of the proposed class because they will fairly and adequately represent and protect the interests of all putative class members and because there are no known conflicts of interest between Named Plaintiffs and any putative class members. Other current and former employees of Defendants are available to serve as class representatives if the Named Plaintiffs is found to be inadequate.

40. Named Plaintiffs has retained attorneys who are competent and experienced in class action litigation and they intend to prosecute this action vigorously. Therefore, the interests of putative class members will be fairly and adequately protected by Plaintiffs and their counsel.

41. **Superiority:** A class action is superior to other available means for the fair and efficient adjudication of this controversy, since the individual joinder of all members of the two proposed classes is impracticable. A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damage suffered by each individual of each class may be small, on a relative basis, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them. Moreover, an important public benefit will be realized by addressing the matter as a class action. The cost to the court system of adjudication of such individual litigation would be substantial. Individual litigation would also present the potential for inconsistent or contradictory judgments. Adjudication of individual class members' claims with respect to Marathon would, as a practical matter, be dispositive of the interest of other members or substantially impair or impede the ability of other individual members of the proposed classes to protect their interests.

## **ALLEGATIONS OF NAMED PLAINTIFFS**

42.     During the class period, Plaintiff Butel has worked and continues to work as an operator at Marathon's Los Angeles Refinery. Plaintiff Mocherniak also worked as an operator at Marathon's Los Angeles Refinery. During the course of their employment, Plaintiffs were required to cover (i.e., be ready to work) standby shifts.

43.     When assigned to cover a standby shift, Plaintiffs and other operators had to be at the ready to receive a call for the period one hour prior to the start of a standby shift until thirty minutes after the standby shift commenced. If Plaintiffs and other operators received a call, they had about 3.5 hours to arrive at the refinery.

44.     Marathon considered Plaintiffs and the other operators at its Los Angeles Refinery as absent without leave and subjected them to discipline if they failed to answer a call during the designated time period. During their employment with Marathon, Plaintiffs have been frequently scheduled to cover standby shifts, which always involved set scheduled start times and end times.

45.     Unless Plaintiffs and other operators were asked to work a standby shift, Marathon did not provide them with any compensation, including reporting time pay.

46.     Plaintiffs and other employees have also been required to travel to their work units and wait until five minutes before their shift start time to clock-in. Plaintiffs and other employees are prohibited from using their own vehicles to travel to and from their work units. Instead, Plaintiffs and other employees must leave their personal vehicles parked outside of the Refinery, walk through an employee turnstile with their badge, and travel, either by walking, bicycling, or finding a ride on an on-site company vehicle, to the work unit. When at the work unit, they must wait until five minutes before their shift to clock-in. At the end of their shift, Plaintiffs and other employees are required to clock-out at their work unit and travel back to an employee turnstile before they can exit the refinery.

47.     Marathon did not, and does not, compensate Plaintiffs and other employees for travel time to and from their work units.

# **FIRST CAUSE OF ACTION**

FAILURE TO PAY REPORTING TIME PAY

(Wage Order 1-2001; 8 C.C.R. § 11010)

(By Named Plaintiffs and the Putative Standby Class Members Against All Defendants)

48.     Named Plaintiffs reallege and incorporate by reference all prior paragraphs as if fully set forth herein.

49.     Wage Order 1-2001 provides that "[e]ach workday an employee is required to report for work and does report, but is not put to, work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage."

50.     As set forth herein, Marathon scheduled Plaintiffs and the Standby Time Class for standby shifts that required them to be at the ready to receive a call and face discipline if they did not answer such call. Marathon also required Plaintiffs and the Standby Time Class to arrive at work within a designated time period if asked to work the scheduled standby shift. Failure to answer a call or arrive at work within the time frame subjected Plaintiffs and the Standby Time Class to discipline.

51.     Marathon has failed to pay required reporting time pay to Plaintiffs and the Standby Time Class, as Plaintiffs and the Class were not paid reporting time pay or any compensation for having to be at the ready to work a standby shift. Marathon compensated only operators asked to come to work and work the standby shift.

52.     As a direct and proximate result of actions as set forth herein, Named Plaintiffs and putative class members have sustained economic damages, including, but not limited to, unpaid wages (reporting time pay) and lost interest, in an amount to be established at trial, and are entitled to recover economic and statutory damages and penalties and other appropriate relief from Defendant's violations of Wage Order 1-2001.

WHEREFORE, Plaintiffs pray for judgment as set forth herein below.

SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## **SECOND CAUSE OF ACTION**

### FAILURE TO PAY FOR TRAVEL TIME

(Lab. Code §§ 218, 218.5, 1194, and 1199; Wage Order 1-2001; 8 C.C.R. § 11010)

(By Named Plaintiffs and the Putative Travel Time Class Members Against All Defendants)

53.     Named Plaintiffs realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

54.     Wage Order 1-2001 mandates that employees be paid for all "hours worked." Wage Order 1-2001 defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." 8 C.C.R. § 11010.

55.     Marathon requires employees to travel from the employee turnstiles to their units, and wait until five minutes  before their shifts begin to clock in, and clock out, at their work units and not at the turnstiles. During this time, employees are subject to discipline for violating Marathon's work rules, including Marathon's requirement that employees wear PPE while traveling throughout the Refinery.

56.     Marathon has failed to pay Plaintiffs and the Travel Time Class for time spent traveling to and from their work units, compulsory travel time that counts as "hours worked" under Wage Order 1-2001.

57.     As a direct and proximate result of Marathon's actions as set forth herein, Named Plaintiffs and putative class members have sustained economic damages, including, but not limited to, unpaid wages and lost interest, in an amount to be established at trial, and are entitled to recover economic and statutory damages and penalties and other appropriate relief from Defendant's violations of Wage Order 1-2001. Pursuant to California law, including Labor Code §§ 218, 218.5, 1194 and 1199, Plaintiffs seek unpaid wages from Marathon on behalf of themselves and the Travel Time Class.

WHEREFORE, Plaintiffs pray for judgment as set forth herein below.

## **THIRD CAUSE OF ACTION**

FAILURE TO PAY ALL WAGES EARNED AT TERMINATION

(Lab. Code §§ 200-203)

(By Plaintiff Pam Mocherniak and All Putative Class Members Against All Defendants)

58.     Named Plaintiff Mocherniak realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

59.     Labor Code §§ 201 and 202 require that Marathon pay their employees all wages due within 24 hours after a discharge or 72 hours after a resignation from employment, if the employee has given less than 72 hours' notice. Labor Code section 203 provides that if an employer willfully fails to timely pay such wages the employer must, as a penalty, continue to pay the employee's daily wage until the back wages are paid in full or an action is commenced. The penalty cannot exceed 30 days of wages.

60.     Members of the Class who have separated from Marathon's employment were not paid the required reporting time pay or wages owed for travel time within 24 hours after a discharge, or 72 hours after a resignation, as applicable.

61.     Marathon's failure to pay required reporting time pay and travel time pay upon termination was willful.

62.     As a direct and proximate result of Marathon's willful conduct in not paying members of the Class all earned wages at the time their employment with Marathon ended, each member of the Class whose employment with Marathon ended is entitled to 30 days' wages as a penalty under Labor Code § 203.

WHEREFORE, Plaintiffs pray for judgment as set forth herein below.

SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### **FOURTH CAUSE OF ACTION**

FAILURE TO FURNISH ACCURATE ITEMIZED WAGE STATEMENTS

(Lab. Code § 226; Wage Order 1-2001)

(By Named Plaintiffs and All Putative Class Members Against All Defendants)

63.     Named Plaintiffs reallege and incorporate by reference all prior paragraphs as if fully set forth herein.

64.     Defendants failed to furnish Named Plaintiffs and the putative class members with complete and accurate itemized statements, as required by California Labor Code § 226(a). The wage statements, among other things, failed to accurately provide the gross or net wages earned, including travel time and reporting time pay, as required by California Labor Code sections 226(a)(1) and (2). Named Plaintiffs are informed and believe that, at all relevant times, Defendants' failure was knowing and intentional.

65.     Named Plaintiffs and the putative class members could not easily and promptly determine from their wage statements that they had been properly paid. Wages for travel time and reporting time pay was not accurately reported or calculated, such that no calculations could be performed to derive the accurate times, rates, and pay that should have been part of their compensation. The information to make such determinations could not be readily ascertained by the wage statement, standing alone, or without reference to other documents or information.

66.     As a result of the Defendant's conduct as alleged above, Named Plaintiffs and the putative class members are each entitled under California Labor Code § 226(e) to recover the greater of actual damages or $50 for the initial pay period in which a violation occurred and $100 for each subsequent pay period in which Defendants failed to comply with the statute, up to a maximum of $4,000 per employee.

WHEREFORE, Plaintiffs pray for judgment as set forth herein below.

**FIFTH CAUSE OF ACTION**

PRIVATE ATTORNEYS GENERAL ACT

(Lab. Code § 2698 *et seq*.)

(By Named Plaintiffs and All Aggrieved Employees Against All Defendants)

67.     Named Plaintiffs reallege and incorporate by reference all prior paragraphs as if fully set forth herein.

68.     Named Plaintiffs is an "aggrieved employee" within the meaning of California Labor Code § 2699(c), and a proper representative to bring a civil action on behalf of himself and other current and former employees of Defendants pursuant to the procedures specified in California Labor Code § 2699.3, because Plaintiffs were employed by Defendants and the alleged violations of the California Labor Code were committed against Plaintiff.

69.     The California Private Attorneys General Act of 2004, Labor Code § 2698 *et seq.* ("PAGA"), provides that "[n]otwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees …." Lab. Code § 2699(a).

70.     Named Plaintiffs allege, on behalf of themselves and other current and former employees of Defendants, that Defendants have violated, among other statutes and regulations, California Labor Code §§ 200-203, 226 and 226.3.

71.     Pursuant to Labor Code § 2699(a) Plaintiffs seek to recover civil penalties, as otherwise provided by statute, for which Defendants are liable as a result of the foregoing violations of the Labor Code sections in an amount to be proven at trial, including, but not limited to, penalties under Labor Code sections 226.3, 558, and 2699(f). Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs pursuant to Labor Code § 2699(g)(1).

72.     Named Plaintiffs have exhausted their administrative remedies as required by Labor Code section 2699.3(a). On May 4, 2023, Named Plaintiffs provided written notice,

SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

via online filing, to the Labor and Workforce Development Agency ("LWDA") and Defendants as to the claims alleged herein, namely, the specific provisions of the California Labor Code, among other state statutes and regulations, that Defendants are alleged to have violated, as well as the facts and theories supporting those violations. Plaintiffs paid the fee required by Labor Code section 2699.3(a)(1)(B). The LWDA did not notify Plaintiffs and the employer that it intends to investigate the alleged violation within the time periods specified in Labor Code 2699.3(a).

WHEREFORE, Plaintiffs pray for judgment as set forth herein below.

## **PRAYER FOR RELIEF**

Plaintiffs pray for relief as follows:

1. For an order certifying the proposed classes;

2. For an order designating Named Plaintiffs as class representative;

3. For an order designating Named Plaintiffs' counsel of record as class counsel;

4. For an award of all unpaid wages due to Named Plaintiffs and putative class members during the statutory period as defined by the Court at the time of certification;

5. For an award of damages pursuant to California Labor Code § 226(e);

6. For an award of statutory and civil penalties pursuant to California Labor Code § 2699 equal to the penalties provided in Labor Code §§ 226.3, 558, and 2699(f) and Wage Order 1-2001;

7. For preliminary and permanent injunctive relief enjoining Defendants from violating the relevant provisions of the California Labor Code;

8. For declaratory relief;

9. For prejudgment and postjudgment interest on all sums awarded;

10. For an award of attorneys' fees and costs incurred in the filing and prosecution of this action, as provided by Labor Code §§ 218.5, 226(e), 226(h) and 2699, California Code of Civil Procedure § 1021.5 and any other appropriate statutes;

11.    For costs of suit; and

12.    For such other and further relief as the Court may deem proper and just.


Dated: September 29, 2023

**GILBERT & SACKMAN**
A Law Corporation


By: _____
Joshua F. Young
Attorneys for Plaintiffs

SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## <u>DEMAND FOR JURY TRIAL</u>

Named Plaintiffs Louis Butel and Pam Mocherniak, individually and on behalf of all similarly situated current and former employees of Defendants, hereby request a jury trial on all claims so triable.


Dated: September 29, 2023                    Respectfully submitted,

                                             **GILBERT & SACKMAN**
                                             A Law Corporation


                                             By: _____
                                             Joshua F. Young
                                             Attorneys for Plaintiffs

SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF