JAY SMITH (CA Bar No. 166105)
(Email: js@gslaw.org)
JOSHUA F. YOUNG (CA Bar No. 232995)
(Email: jyoung@gslaw.org)
NICOLE GRINSTEIN (CA Bar No. 320889)
(Email: ngrinstein@gslaw.org)
**GILBERT & SACKMAN
A LAW CORPORATION**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000
Fax: (323) 937-9139

*Attorneys for Plaintiffs Louis Butel
and Pam Mocherniak*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS BUTEL and PAM MOCHERNIAK, individually and on behalf of all similarly situated current and former employees,<br><br>Plaintiffs,<br><br>v.<br><br>MARATHON REFINING AND LOGISTICS SERVICES LLC, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:23-cv-04547-DSF-JPR<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT MARATHON'S MOTION TO DISMISS PLAINTIFFS' SECOND CAUSE OF ACTION**<br><br>Date:      November 13, 2023<br>Time:      1:30 p.m.<br>Crtrm:    7D<br>Judge:    Hon. Dale S. Fischer<br><br>Action Filed:  May 4, 2023<br>Trial Date:    February 4, 2025 |

RANDY RENICK (CA Bar No. 179652)
(Email: rrr@hadsellstormer.com)
CORNELIA DAI (CA Bar No. 207435)
(Email: cdai@hadsellstormer.com)
SARAH CAYER (CA Bar No. 334166)
(Email: scayer@hadsellstormer.com)
**HADSELL STORMER RENICK & DAI, LLP**
128 North Fair Oaks Avenue, Suite 204
Pasadena, California 91103-3645
Telephone: (626) 585-9600
Fax: (626) 577-7079

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................ 1

II.   RELEVANT FACTUAL BACKGROUND ....................................... 3

III.  ARGUMENT .................................................................... 4

A.   Plaintiffs Have Stated a Claim for Unpaid Wages for Time Spent Traveling Between the Security Gate of the Refinery—Their Work Site—and Their Respective Work Units ................................................ 4

1.   Defendant Relies on Authority that Does Not Address the Issue of Unpaid Travel Time Spent *Within* a Work Site. ................................ 6

2.   Plaintiffs Do Not Need to Allege that Marathon Required the Use of Employer-Provided Transportation in Order to Demonstrate Control. ...... 7

3.   Marathon's PPE Requirement Both Exerts Control Over Plaintiffs and Begins their Workday. ...................................................... 9

B.   In the Alternative, Plaintiffs Should Be Given the Opportunity to Amend their Complaint ............................................................ 12

PLAINTIFFS' OPPOSITION TO DEFENDANT MARATHON'S MOTION TO DISMISS TO PLAINTIFFS' SECOND CAUSE OF ACTION

# TABLE OF AUTHORITIES

**FEDERAL STATUTES**

29 U.S.C. § 203 *et seq.* ..................................................................................9, 10

29 U.S.C. § 203(o) ..............................................................................................9

**FEDERAL CASES**

*Alvarez v. IBP, Inc.,*
    339 F.3d 894 (9th Cir. 2003) ...............................................2, 5, 9, 10

*Ballaris v. Wacker Siltronic Corp.,*
    370 F.3d 901 (9th Cir. 2004) ..........................................................2

*Chang v. Chen,*
    80 F.3d 1293 (9th Cir. 1996) .........................................................12

*Griffin v. Sachs Electric Co.,*
    390 F.Supp.3d 1070 (N.D. Cal. 2019) ....................................passim

*IBP, Inc. v. Alvarez,*
    546 U.S. 21 (2005) .........................................................................10

*Nelson v. Wal-Mart Assocs.,*
    2022 WL 394736 (D. Nev. Feb. 9, 2022) ......................................9

*Sandifer v. U.S. Steel Corp.,*
    571 U.S. 220 (2014) .......................................................................9

*Senne v. Kan. City Royals Baseball Corp.,*
    934 F.3d 918 (9th Cir. 2019) .........................................................10

**STATE CASES**

*Aguilar v. Ass'n for Retarded Citizens,*
    234 Cal. App.3d 21 (1991) ..........................................................4, 6

*Bono Enters., Inc. v. Bradshaw,*
    32 Cal. App.4th 968 (1995) .........................................................4, 6

*Frlekin v. Apple Inc.,*
    8 Cal.5th 1038 (2020) ........................................................5, 7, 8, 10

PLAINTIFFS' OPPOSITION TO DEFENDANT MARATHON'S MOTION TO DISMISS TO PLAINTIFFS' SECOND
CAUSE OF ACTION

*Guerrero v. Superior Court,*
    213 Cal.App.4th 912 (2013)..................................................................10

*Hernandez v. Pacific Bell Telephone Co.,*
    29 Cal.App.5th 131 (2018).............................................................1, 6, 8

*Mendiola v. CPS Security Solutions, Inc.,*
    60 Cal.4th 833 (Cal. 2015) ...........................................................10

*Morillion v. Royal Packing Co.,*
    22 Cal. 4th 575 (2000) ...........................................................passim

*Overton v. Walt Disney Co.,*
    136 Cal.App.4th 263 (2006)....................................................passim

**STATE RULES & REGULATIONS**

8 Cal. Code Regs. § 11010 .............................................................2, 4, 10, 12

8 Cal. Code Regs. § 11010 subd. 2(G) ............................................................2

# I.    INTRODUCTION

This Court previously granted Defendant's motion to dismiss Plaintiffs' Second Cause of Action against Defendant Marathon Refining Logistics Services, LLC ("Marathon") for failure to pay employees for all time worked at the Los Angeles Refinery ("Refinery"), specifically, time employees are required to spend traveling inside the Refinery from the security gate entrance, where they are required to badge in, to their individual work units, where they clock in. Plaintiffs filed a Second Amended Complaint that added facts regarding the time spent between the security gate and the individual work units (including the fact that employees must wear personal protective equipment), and Marathon has once again moved to dismiss this claim. The Court should deny Defendant's Motion to Dismiss Plaintiffs' Second Cause of Action, as the travel time claim is adequately supported by the facts and the law.

Marathon argues that its policies fit squarely within the "optional free transportation" that the *Morillion v. Royal Packing Co.* court exempted from travel time pay. 22 Cal.4th 575, 594 (2000). Its Motion to Dismiss relies on cases in which, like *Morillion*, employees sought compensation for the time traveled from a public area to their work site, particularly *Overton v. Walt Disney Co.*, 136 Cal.App.4th 263 (2006), *Hernandez v. Pacific Bell Telephone Co.*, 29 Cal.App.5th 131 (2018), and *Griffin v. Sachs Electric Co.*, 390 F.Supp.3d 1070 (N.D. Cal. 2019). Each of these cases addressed travel external to the employees' job or work site. Regardless of whether the travel was mandatory or optional, it occurred outside of the area where the employees performed their work subject to their employer's control. *Here, all of the travel time at issue takes place on the work site where the work is being performed by employees.* Plaintiffs' circumstances are thus distinct from the cases relied on by Defendant, and those decisions bolster, rather than undercut, a determination that Plaintiffs have stated a cause of action for unpaid travel time.

By making the incorrect and unsupported presumption that the factual circumstances here are aligned with those cases, Marathon misapplies the central finding

of *Morillion* and the plain language of IWC Wage Order 1-2001—that employees are entitled to pay for the time that they spend under their employer's control. *See Morillion*, 22 Cal.4th at 578 (concluding that "the time agricultural employees are required to spend traveling on their employer's buses is compensable under Wage Order No. 14-80 because they are 'subject to the control of an employer'"). *See also* 8 Cal. Code Regs. § 11010 subd. 2(G) (defining "hours worked" as "time during which an employee is subject to the control of an employer"). Marathon exercises significant control over the employees once they enter the Refinery through the security gate turnstiles. Regardless of whether Marathon's employees ride an employer-owned vehicle or bicycle or simply walk between the Refinery's security gate and their work units (employees have no choice in this matter – they choose the method of conveyance based on the location of their particular work unit at the work site), they are subject to Marathon's control from the moment they walk through the turnstiles to enter the worksite. During that period, they are physically present on the work site and their workday begins, and Marathon treats them as employees by imposing rules unique to employees such as mandatory personal protective equipment ("PPE") and by meting out discipline when employees violate those rules. Because Plaintiffs and other employees are subject to Marathon's control, the time employees spend traveling on the work site between the security gate and their work units is compensable.

That the employees have begun their workday subject to employer control is illustrated in this case by Marathon's requirement that all employees wear personal protective equipment (PPE) upon entering the Refinery grounds to perform their work. As in many industries, the mandated donning of PPE here starts the workday. *See, e.g.*, *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910–12 (9th Cir. 2004); *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902–04 (9th Cir. 2003) *aff'd IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005). Marathon alleges this is irrelevant because non-employees also must wear some PPE. However, the Refinery is a restricted area not open to the general public, and non-

employees are not typically present. Furthermore, Plaintiffs, unlike Refinery guests, are subject to discipline for noncompliance.

As Plaintiffs have alleged sufficient facts to support their travel time claim, the Court should deny Defendant's Motion to Dismiss Plaintiff's Second Cause of Action. In the alternative, Plaintiffs respectfully request the opportunity to amend their Complaint.

## II.    RELEVANT FACTUAL BACKGROUND

Marathon owns and/or operates the Los Angeles Refinery, which includes an oil refinery, sulfur plant, terminal facilities, lubricants plant, and distribution facilities located in or around Carson and Wilmington, California. Second Amended Complaint ("SAC"), Dkt. #31, at ¶ 9. At the beginning of each workday, Marathon requires that Plaintiffs arrive at a designated employee entrance and leave any personal vehicles outside of the security gate entrance to the Refinery. SAC, Dkt. #31, at ¶ 23-24. Once inside the Refinery, Marathon requires that Plaintiffs wear PPE, including hard hats, safety glasses, flame retardant clothing, specialized footwear, goggles, gloves, hearing protection, and hydrogen sulfide monitors. SAC, Dkt. #31, at ¶ 23. Though guests may also be required to wear some PPE like hard hats, Plaintiffs have unique PPE requirements to perform their work, particularly flame-retardant clothing and hydrogen sulfide monitors. *Id.* at ¶ 23. Plaintiffs must travel between the employee entrances to the Refinery, where they must badge in through a turnstile, to their designated work units, where they clock in. SAC, Dkt. #31, ¶ 23-24. Plaintiffs may work in different work units throughout the Refinery, but all of their work is performed within the Refinery's perimeter. SAC, Dkt. #31, ¶ 13. Marathon's work rules prohibit employees from using their own transportation to get to and from their work unit within the Refinery, so they must either walk or find a ride from one of Marathon's on-site vehicles or company-owned bicycles to make this trek. Whether they are walking, riding in a vehicle, or riding a bicycle, Plaintiffs must already be wearing PPE during their trip from the security gate to their work units. SAC, Dkt. #31, at ¶ 23. Plaintiffs are not compensated for this time spent within the Refinery. SAC, Dkt. #31, at ¶ 27.

Even after Plaintiffs arrive at their designated work units, they are not necessarily paid for all of their time. SAC, Dkt. #31, at ¶ 25-26, 48. Marathon does not allow operators to clock-in at their work unit until several minutes before both the day and night shift, which occurs from 5:00 am/pm to 5:00 pm/am (at the Carson side of the Los Angeles Refinery) or 6:00 am/pm to 6:00 am/pm (at the Wilmington side of the Los Angeles Refinery). Maintenance workers work a day shift but may not clock in until shortly before the shift begins. SAC, Dkt. #31, at ¶ 25. While waiting to clock in, Plaintiffs must wear all required PPE. While Plaintiffs are waiting to clock in, Marathon may subject them to discipline if they are in violation of any rules. Like the time which Plaintiffs spend traveling from the security entrance to their individual work units, Plaintiffs are also not paid for any time spent waiting to be allowed to clock in at their designated work units. SAC, Dkt. #31, at ¶ 27.

## III.   ARGUMENT

### A.   Plaintiffs Have Stated a Claim for Unpaid Wages for Time Spent Traveling Between the Security Gate of the Refinery—Their Work Site—and Their Respective Work Units

IWC Wage Order No. 1-2001 mandates that employees be paid for all "hours worked[,]" and defines "hours worked" as "the time during which an employee is subject to the control of an employer, … includ[ing] all the time the employee is suffered or permitted to work, whether or not required to do so." 8 Cal. Code Regs. § 11010. An employee "does not have to be working during that time to be compensated[;]… "it is only necessary that the worker be subject to the control of the employer in order to be entitled to compensation." *Morillion*, 22 Cal.4th at 584 (internal citations and quotations omitted); *see also Bono Enters., Inc. v. Bradshaw*, 32 Cal.App.4th 968, 974-75 (1995) ("subject to the control of an employer" means "[w]hen an employer directs, commands or restrains an employee"). Generally, when an employee is required to be present at her work site, she is considered under her employer's control. *See Aguilar v. Ass'n for Retarded Citizens,* 234 Cal. App.3d 21, 30 (1991) ("'hours worked' … clearly includes time when an employee is required to be at the employer's premises"). Moreover, when

an employer imposes additional, employee-specific policies that apply outside of compensated hours, the employer extends their control and thus their liability for unpaid wages. *See Frlekin v. Apple Inc.*, 8 Cal.5th 1038, 1046–47 (2020) (finding that employees who are required to obey the employer's bag search policies after clocking out remain subject to the employer's control).

Here, Plaintiffs seek compensation for the time during which they travel from the employee entrance to the Refinery to their respective work units and are subject to Marathon's control. Unlike the employees in *Griffin* and *Overton*, who sought compensation for travel *outside* of the work site, Plaintiffs are not paid for the time spent between the time they enter the work site and the time they arrive at their specific assigned work units. Plaintiffs are subject to Marathon's control during this time as they must follow Marathon's work directives for the performance of their jobs, which go well beyond standard workplace rules like a speed limit or anti-harassment rule. Many employees who work deep within the Refinery must take company-provided transportation to reach their work units. Once inside the Refinery, Plaintiffs must also wear full PPE, including uniquely specific equipment such as hydrogen sulfide (H2S) monitors. They may be subject to professional discipline for failure to wear proper PPE.

The Ninth Circuit has long recognized that a workplace PPE requirement typically signals the beginning of the workday because it primarily benefits the employer and is necessary to the performance of the principal work. *See Alvarez*, *supra*, 393 F.3d at 906 (finding that the workday commenced when employees put on PPE and any time between putting on PPE and clocking in was compensable). A PPE mandate allows the employer to satisfy regulatory requirements and avoid potentially costly workplace injuries. *Id.* at 903. As alleged in the Second Amended Complaint, Plaintiffs' PPE is also essential to the performance of their work. It is not only required by Marathon but also necessary for monitoring and limiting exposure to poisonous gas and other chemicals at the work units.

PLAINTIFFS' OPPOSITION TO DEFENDANT MARATHON'S MOTION TO DISMISS TO PLAINTIFFS' SECOND CAUSE OF ACTION

**1. Defendant Relies on Authority that Does Not Address the Issue of Unpaid Travel Time Spent *Within* a Work Site.**

Marathon relies heavily on *Overton*, *Hernandez*, and *Griffin* to support its theory that Plaintiffs' travel time is non-compensable. However, each of these cases suffers from a key distinction that renders them inapt: in each case, the plaintiffs sought compensation for time spent traveling from public areas *to* their work site. In this case, Plaintiffs seek the unpaid wages for time spent *on* their work site. Courts have repeatedly determined that a work site is a place of control, and if employees must be present there, then they mut be paid. *See Aguilar*, *supra*, 234 Cal. App.3d at 30; *see also Bono*, *supra*, 32. Cal.App.4th at 971.

The distinction between travel within these two different locations is clear in *Griffin v. Sachs Electric Co.* In *Griffin*, the plaintiffs sought compensation for time spent driving on an access road that ran between a security gate and a parking lot to the "solar panel zone" where they worked. 390 F.Supp.3d 1070, 1076 (N.D. Cal. 2019). Employees had the option of using a personal vehicle, carpooling, or riding a bus provided by the defendant. *Id.* Travel across the access road was governed by a series of rules imposed by both the employer and the California Department of Fish and Wildlife to protect certain endangered species. *Id.* When employees arrived at their assigned parking lot, they left behind their personal vehicles, and the defendant provided a shuttle "buggy" between the parking lots and their assigned work zones in the "solar panel zone." *Id.* at 1075–76. The plaintiffs were paid beginning when they boarded the buggies, and the *Griffin* court noted that the buggy policy was consistent with *Morillion. Id.* at 1085.

In this case, Plaintiffs seek pay for the equivalent period that the *Griffin* plaintiffs were on the buggies. Like the *Griffin* work site, the Refinery is a large work site with multiple different areas or units where work can be assigned and performed. Like the *Griffin* plaintiffs, Plaintiffs must travel between the entry to the work site and the physical places at which they perform their daily tasks. While some employees may be able to walk or bike once inside the Refinery if the distance to their work site is short, Plaintiffs

have no choice but to spend *some* amount of time traveling between the security gate turnstile and their work unit after they enter the Refinery. Employees who work deep within the Refinery have no choice but to take a company vehicle because the distance to their specific work unit is longer. But regardless of the distance, the time that Plaintiffs spend traveling within the Refinery is a time they are subject to their employer's control, just like the time the *Griffin* employees spent on buggies.

Like *Griffin*, *Overton* also dealt with time spent traveling *to* a work site, not *on* a work site. In *Overton*, Disneyland employees had the option of using parking spots one mile from the entry to the park. 136 Cal.App.4th at 265. Employees were not paid for the time spent traveling from the parking area to the employee entrance. *Id.* at 271. However, employees were paid beginning when they went through the entrance, where the time clock was located. *Id.* at 266. After walking through the employee entrance, employees generally had to "proceed to their work sites," which were not all located immediately adjacent to the employee entrance. *Id.* Because those employees had already clocked in, they were compensated for the time spent traveling within the Disneyland campus, regardless of where their assigned work area was. In this action, Plaintiffs are not seeking compensation for travel between a reserved parking spot and the entrance to the Refinery; rather, they are seeking compensation for the time that they are traveling within their work site, time for which employees were paid in *Overton*.

### 2. Plaintiffs Do Not Need to Allege that Marathon Required the Use of Employer-Provided Transportation in Order to Demonstrate Control.

As articulated in *Morillion*, employees are entitled to compensation when they are subject to the employer's control. 22 Cal.4th 575, 584–85. Although that control may, as in *Morillion*, take the form of mandatory, employer-provided transit, that is simply one example of "control" that can be imposed on employees before they clock in and are paid for their time or after they clock out and are no longer being paid. In *Frlekin*, the plaintiffs were subject to the employer's control when they could not leave their

workplace without undergoing a bag search. 8 Cal.5th 1038, 1046–47 (2020). Because the employer continued exerting control over employees in excess of their paid work time, the employees were entitled to compensation. The same is true here. Regardless of whether Plaintiffs walk, ride a bicycle, or ride in an Employer-owned vehicle, they are subject to Marathon's control once they enter the work site through the security gate turnstiles. They must wear the proper PPE or risk discipline, even if they travel by foot, bicycle, or vehicle. They also must wait until the proper time to clock in or, once again, be subjected to discipline. They are further restricted in the means of transportation they may use to travel across the Refinery. These rules, coupled with the threat of discipline, establish the control that renders the time compensable in accordance with IWC Wage Order No. 1-2001.

Defendant's comparison of the facts here to *Overton* and *Hernandez*, two cases in which employers provided optional transit as a courtesy, is irrelevant to the analysis here. *See Overton, supra*, 136 Cal.App.4th at 271–72; *Hernandez, supra*, 29 Cal.App.5th at 137–41. In both *Overton* and *Hernandez*, the time in dispute was the travel *before* employees reached the work site and those cases concerned the mandatory or permissive nature of the employer-provided transit in that context. *Overton*, 136 Cal.App.4th at 271–72, n.12 ("alternative forms of transportation" from employee homes to the Disneyland employee entrance, such as the "[Metrolink] train, bus, being dropped off [by friends or family], [and] vanpool" "were encouraged, and ten percent of Disney employees took advantage of them"); *Hernandez*, 29 Cal.App.5th 131, 140 ("Despite the restrictions that Defendant placed on Plaintiff's use of the company vehicle, its use to commute directly to the first job assignment was voluntary. Thus, the use of the vehicle to commute to and from home was not compensable.") (quoting *Novoa v. Charter Communications, LLC*, 100 F.Supp.3d 1013, 1021 (E.D. Cal. 2015)). In *Overton*, employees sought pay for time spent traveling on public streets, *outside* the employer's premises. *Overton*, 136 Cal.App.4th at 265. In *Hernandez*, the travel also took place on public streets between the employees' homes and customer residences. *Hernandez*, 29 Cal.App.5th at 134. The

same query does not exist for the Plaintiffs in this case as they are confined to travel within the Refinery from their entry through the security gate turnstiles to their assigned work unit within the Refinery. During that travel time, regardless of how they travel, Plaintiffs are subject to Marathon's control. Moreover, for employees who cannot realistically walk to their work units because of where the work unit is located inside the Refinery, their only choice to get from the gate to the work unit is to take company-provided transportation. There is no "feasible" alternative because of the size of the Refinery and the fact that "no alternative transportation is available." *Overton*, 136 Cal.App.4th at 272.

### 3.    Marathon's PPE Requirement Both Exerts Control Over Plaintiffs and Begins their Workday.

The policy most illustrative of Marathon's control is its stringent PPE requirement for employees. At the Refinery, employees must wear PPE as soon as they enter the facility, and during the time they spend traveling from the turnstile to their work units. Although Marathon does not require employees to don and doff PPE at the facility itself (employees have the option to change at home), once on the Refinery premises, employees must wear PPE or be subject to discipline.[1]

Under both federal and California law, wearing PPE is subject to special treatment because it is particularly indicative of employer control. Under *Alvarez v. IBP, Inc.*, the workday starts when employees are required to put on PPE. 339 F.3d 894, 902–04 (finding employees should be compensated for the donning of PPE and the walk between the changing area and the workstation); *see also Nelson v. Wal-Mart Assocs.*, 2022 WL 394736, at *6 (D. Nev. Feb. 9, 2022). Under the Fair Labor Standards Act,  ("FLSA"), time spent donning PPE is considered "work" when it is integral and indispensable to the

---

[1] Because employees have the option to change into PPE at home, Plaintiffs do not claim that the time employees spend donning/doffing PPE itself is compensable. Further, the parties to a collective bargaining agreement may waive the donning/doffing time associated with changing into PPE if it consists primarily of "changing clothes," although without such a waiver, the time *is compensable* under the FLSA. 29 U.S.C. § 203(o); *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220 (2014).

PLAINTIFFS' OPPOSITION TO DEFENDANT MARATHON'S MOTION TO DISMISS TO PLAINTIFFS' SECOND CAUSE OF ACTION

principal work. Donning PPE begins the "continuous" workday and all time following the donning of PPE is compensable worktime. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 31 (2005) ("[C]onsistent with the continuous workday rule, the District Court concluded that, for those employees required to don and doff unique protective gear, the walking time between the locker room and the production floor was also compensable because it occurs during the workday.")

Under the FLSA, once the workday is initiated, it only ends when the employee completes the final principal activity and ceases working. *See Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 941 (9th Cir. 2019) ("[The FLSA] presumes that once the beginning of the workday is triggered, an employee performs compensable work throughout the rest of the day until the employee completes their last principal activity"). Although *Alvarez* and *Senne* were decided according to federal law, California law is broader, because there is no distinction between principal and preliminary/postliminary activities. *Frlekin v. Apple, Inc.*, 8 Cal.5th 1038 n.4 (Cal. 2020). *See also Mendiola v. CPS Security Solutions, Inc.*, 60 Cal.4th 833, 843 (Cal. 2015) ("Federal regulations provide a level of employee protection that a state may not derogate."); *Guerrero v. Superior Court*, 213 Cal.App.4th 912, 943 (2013). In California, *all* time spent subject to the employer's control is compensable. *Frlekin*, 8 Cal.5th at 1046.

In this case, IWC Wage Order 1-2001 should be interpreted to encompass *Alvarez*'s treatment of the time when PPE is required to be worn as the initiation of the workday, as that is the time when Marathon begins to exert its control over Plaintiffs. Plaintiffs are under unique obligations to wear specific protective clothing and carry specific tools, particularly H2S monitors. SAC, Dkt. #31, at ¶ 23. Employees traveling in company vehicles must wear flame-retardant clothing and foot protection, and have a hard hat, eye protection, hearing protection, and an H2S monitor immediately available. *Id.* Marathon's control ends when Plaintiffs are no longer subject to Marathon's PPE and other workplace requirements, which is when the Plaintiffs exit through the security turnstiles.

As the Second Amended Complaint alleges, Marathon's PPE requirement applies once Plaintiffs enter the Refinery, the site where they perform their work. *Id.* Marathon's authority and control continues as Plaintiffs walk, bicycle, or take a ride to their work units and wait until they clock in. Marathon can discipline employees for their failure to wear proper PPE, even if those employees have not clocked in and are not being compensated at the time of discipline. As Marathon's Motion to Dismiss points out, the PPE that Plaintiffs wear is essential to their work: it is required by the Occupational Safety and Health Administration and California law in order to safely complete work at a refinery and minimize Marathon's costs associated with workplace injuries and regulatory fees. Motion to Dismiss, Dkt. #34-1, at 9:2-12. Plaintiffs' workdays begin, at a very minimum, at the time when they are required to be in PPE, which is when they enter the Refinery work site. Their workday ends when they exit the Refinery, are free to remove their PPE, and are no longer subject to Marathon's control. Plaintiffs have adequately stated a claim to recover the unpaid wages from those periods.

Marathon argues that its PPE requirement does not change the analysis, but it cites no support for such an allegation. Except for *Griffin*, the cases on which Marathon relies did not touch on the issue of PPE, and the *Griffin* court found there was no evidence that employees in that case had to wear PPE. As Marathon mentions, the *Griffin* plaintiffs were subject to "safety precautions," many of which were not for the employer's benefit but rather to protect wildlife. 390 F.Supp.3d. at 1089–90. The precautions at issue in *Griffin* were also not unique to the employees; rather, the safety precautions which the court referred to as "inherent feature[s] of the [job] site rather than an independent direction or command imposed by [the employer] on its employees" included speed limits and limitations on smoking, which would apply to anyone in the protected wildlife area. *Id.* at 1076–77. These safety precautions did not include a PPE requirement. Unlike the travel time at issue here, the *Griffin* court specifically found that there was "no evidence that workers were required to wear PPE during normal travel between the Security Gate and the parking lots," and determined that "no reasonable jury could infer

that workers were required to wear PPE within cars or buses during daily roundtrip travel on the Access Road." *Id.* Therefore, in *Griffin*, the court found that the defendants did not exert significant control or initiate the workday before employees got into the buggies. *Id.*

In this case, the Defendants admit that employees are required to wear PPE. Motion to Dismiss, Dkt. #34-1, at 9:13-23. The PPE requirement initiates Plaintiffs' workday. They enter through the turnstile and at that point must be wearing protective clothing and shoes, even if they are just about to sit on a shuttle or ride a bicycle. They must carry tools that constantly monitor the presence of toxins in the air around them. They are subject to unique discipline for noncompliance. While visitors on the Refinery premises may also wear some PPE, the Refinery is not open to the general public, visitors do not have a duty to respond to workplace emergencies that may require PPE, employees travel through different areas than visitors, and visitors are not subject to the same disciplinary rules as employees.

Until employees are able to clock in, they are at their work site, subject to their employer's rules, all without pay. Under Wage Order No. 1-2001 and controlling legal authorities, that time is compensable. The Second Amended Complaint states a claim for that compensation.

## B. In the Alternative, Plaintiffs Should Be Given the Opportunity to Amend their Complaint

If the Court is inclined to conclude Plaintiffs' allegations do not establish sufficient employer control, Plaintiffs should be given the opportunity to amend their complaint. *See Chang v. Chen,* 80 F.3d 1293, 1296 (9th Cir. 1996).

Dated: October 23, 2023

**GILBERT & SACKMAN**
A Law Corporation

**HADSELL STORMER RENICK & DAI, LLP**

By: /s/ Joshua F. Young
Joshua F. Young
Attorneys for Plaintiffs

PLAINTIFFS' OPPOSITION TO DEFENDANT MARATHON'S MOTION TO DISMISS TO PLAINTIFFS' SECOND CAUSE OF ACTION