GIBSON, DUNN & CRUTCHER LLP
CATHERINE A. CONWAY, SBN 98366
 CConway@gibsondunn.com
JESSE A. CRIPPS, SBN 222285
 JCripps@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
 BHamburger@gibsondunn.com
TIFFANY PHAN, SBN 292266
 TPhan@gibsondunn.com
MADELEINE MCKENNA, SBN 316088
 MMcKenna@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA  90071
Telephone:  213.229.7000
Facsimile:   213.229.7520

Attorneys for Defendant
MARATHON REFINING LOGISTICS SERVICES LLC
(erroneously sued as MARATHON REFINING AND LOGISTICS SERVICES LLC)

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS BUTEL and PAM MOCHERNIAK, individually and on behalf of all similarly situated current and former employees,<br><br>            Plaintiffs,<br><br>     v.<br><br>MARATHON REFINING AND LOGISTICS SERVICES LLC, and DOES 1 through 10, inclusive,<br><br>            Defendants. | CASE NO. 2:23-cv-04547-DSF-JPR<br><br>**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF JOINT STIPULATION RE: DISCOVERY DISPUTES PURSUANT TO L.R. 37-2**<br><br>Date:    May 29, 2024<br>Time:    10:00 a.m.<br>Crtrm:   880<br>Judge:   Hon. Jean P. Rosenbluth<br><br>Action Filed:         May 4, 2023<br>Discovery Cutoff:  June 3, 2024<br>Pretrial Conference: January 6, 2025<br>Trial Date:           February 4, 2025 |

Marathon Refining Logistics Services LLC seeks to compel a production of (1) standby trade and standby-related text messages, voicemails, emails, social media posts, and photos with associated location data from eight putative class members who previously submitted declarations and (2) the Named Plaintiffs' bank and credit card records from the days they were scheduled for "primary relief" or "standby." These records are highly relevant to disputed questions of fact in this litigation—the variability in the implementation of Marathon's standby policy, whether and to what extent Marathon's standby policy restricted employees' activities, how standby shifts are traded, and the costs imposed by Marathon's standby policy. Marathon's requests are narrowly tailored to seek information reflecting what putative class members were doing while on standby and whether they engaged in informal standby trades. Privacy interests do not outweigh the relevance of these materials and can be managed through the parties' protective order, which has a Highly Confidential – Attorneys' Eyes Only designation. As a result, this Court should order production of the requested materials.

**A.    Declarants' Text Messages, Voicemails, Emails, Social Media Posts, and Photos Are Highly Relevant to Plaintiffs' Reporting Time Claims.**

Plaintiffs argue that "Marathon has not identified any facts at issue in this case that would justify unfettered access" to text messages, voicemails, emails, social media posts, and photos with associated location data from Plaintiffs' declarants. Joint Stipulation re Discovery Disputes, Dkt. 69-1 at 15:22–23. Plaintiffs mischaracterize Marathon's requests, which are limited to information related to standby.

Discovery into putative class members' activities during standby is needed to understand whether the putative class members actually "report[ed] for work" and presented themselves "as ordered" while on primary relief. *Ward v. Tilly's, Inc.*, 31 Cal. App. 5th 1167, 1185 (2019). Marathon contends that the written standby policy alone does not resolve whether putative class members were under Marathon's control during standby, such that they were "reporting for work." As the Ninth Circuit recently emphasized in *Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1224 (9th Cir. 2024), "'the

mere existence' of a company policy—with little evidence that it was implemented or enforced uniformly—does 'not constitute significant proof that a class of employees were subject to an unlawful practice.'" This is particularly true when, as here, the "policies by their nature . . . implicate each proposed class member's personal preferences, practices, or proclivities." *Id.*

Plaintiffs incorrectly assert that Marathon seeks these records on "[t]he mere *chance* there is something . . . that might contradict" declarants' testimony or to "limit its damages for wrongful conduct." Dkt. 69-1 at 17:27–28, 18:4–5. During depositions, Plaintiffs' declarants admitted that they could not recall what they were doing while on standby. *See, e.g.*, Dkt. 69-2 at 239–40 (declarant Josh Parker testifying that he did not "recall the time [he] was called. . . or the date" of an out-of-town trip he took during standby); *id.* at 245 (declarant Joe Lira testifying that he did not recall whether he has "seen friends" during standby). Marathon is seeking records to determine how putative class members spent their time during standby—which they previously admitted they could not recall. These records are directly relevant to Plaintiffs' claims that employees were severely restricted in their ability to engage in personal activities during standby and therefore "report[ed] for work." Cal. Code Regs. tit. 8, § 11010, subd. 5(A).

The cases cited by Plaintiffs underscore the distinction between Marathon's relevant, tailored discovery requests and expansive requests rejected by courts. In *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1061, 1072 (9th Cir. 2004), after stipulating that class members were protected under Title VII, the defendant sought discovery into the immigration status of class members to support an after-acquired evidence defense that class members were not entitled to relief. Unlike the defendant in *Rivera*, who sought discovery into highly sensitive information no longer at issue, Marathon's requests are directly relevant to the parties' core factual disputes. In *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 569 (C.D. Cal. 2012), a plaintiff sought emotional distress damages and asserted that she had cut herself off from friends. The defendant moved to compel all social media photos of the plaintiff; all plaintiff's social media profiles, posts, and

messages "that reveal, refer, or relate to events that could reasonably be expected to produce a significant emotion, feeling, or mental state"; and all "third-party communications to Plaintiff that place her own communications in context." *Id.* at 569. The court denied these requests, reasoning that "[d]efendant fail[ed] to make the threshold showing that *every* picture of Plaintiff taken over a seven-year period . . . would be considered relevant [to plaintiff's emotional distress claim]." *Id.* at 572 (emphasis added). Marathon's requests are far from the "fishing expedition" in *Mailhoit*, as these requests are specifically limited to putative class members' standby-related communications and records. These records directly bear on implementation of Marathon's policy. *Miles* has underscored the importance of a policy's uniform implementation and enforcement when, as here, the question is "whether a class of employees were subject to an unlawful practice." 89 F.4th at 1224.

Plaintiffs also contend the records are "minimally relevant" because resolution of this case rests on the language of Marathon's standby policy itself, rather than an assessment of the policy's implementation and enforcement. Dkt. 69-1 at 15:4–6. Plaintiffs rely on *Ghazaryuan v. Diva Limousine, Ltd.*, 169 Cal. App. 4th 1524 (2008), but *Ghazaryuan* did not address whether a policy itself was sufficient to render an employer liable for reporting time. Instead, *Ghazaryuan* involved claims for "on-call time," which are governed by a different standard than the reporting time claims at issue in this litigation. *See* Cal. Code Regs. tit. 8, § 11010, subd. 5(A). Both parties agree that to prevail on a reporting time claim, an individual must report for work.

The parties may disagree about how to determine when an individual is reporting for work, but this does not render Marathon's requests for documents irrelevant. Text messages, cell phone records, emails, social media posts, and photos related to standby or standby trades are highly probative as to whether an individual reported for work or not and, as a result, Marathon should be able to obtain this evidence.

**B.   Discovery from Declarants Is Not Unduly Burdensome.**

Marathon's requested discovery from Plaintiffs' eight putative class member

declarants is narrowly tailored, and these records are easily searchable on declarants' personal cell phones without the assistance of counsel. Plaintiffs' reliance on *Aldapa v. Fowler Packing Company, Inc.*, 2019 WL 2635947, at *8 (E.D. Cal. June 27, 2019), to argue that "it is unrealistic to expect absent class members to maintain and preserve such detailed records over the duration of the class period" is misplaced. Dkt. 69-1 at 18:12–13. The documents at issue in *Aldapa* were physical purchase receipts over the course of multiple years. 2019 WL 2635947, at *8. Here, Marathon seeks electronic records routinely stored on personal cell phones. Text messages and emails are searchable with keywords like "PR," "shift," and "standby." Photos and social media posts can be searched by date. Marathon's request is, therefore, not unduly burdensome.

**C.  Declarants' Privacy Interests Are Outweighed by Their Voluntary Injection.**

Plaintiffs concede that courts "may allow" discovery from "absent [putative] class members who 'injected' themselves into the litigation by providing declarations for class certification." Dkt. 69-1 at 16:19–21. Even so, Plaintiffs focus on a purported chilling effect that might occur if discovery is sought from current employees. Dkt. 69-1 at 18:22–19:7. But these concerns no longer arise once employees have willingly injected themselves into the litigation by choosing to submit declarations. *Aldapa v. Fowler Packing Co., Inc.*, 2019 WL 1047492, at *14 (E.D. Cal. Mar. 5, 2019) ("Any potential chilling effect would likely have prevented these employees from submitting the declarations in the first place."). Here, Marathon seeks discovery only from those who have submitted declarations in support of Plaintiffs' position, therefore obviating any chilling risk. And any concern that Marathon, as an employer, may learn private information can be mitigated through redactions and the parties' protective order which allows for information to be designated "Attorneys' Eyes Only." Dkt. 33 at 11.

**D.  Named Plaintiffs' Bank and Credit Card Records Are Relevant to Plaintiffs' Claim That Standby Imposes "Tremendous Costs" on Employees.**

Marathon's request for the Named Plaintiffs' bank and credit card records related to standby stems directly from the allegations in Plaintiffs' complaint that standby

imposes "tremendous costs" on employees who "are forced to make childcare arrangements, kin-care arrangements," and face other "adverse financial effects[.]" Dkt. 69-2 at 199:6–10. Plaintiffs are, therefore, mistaken in asserting that they "have never alleged that they incurred any financial costs from the standby shifts" and that "nothing in Plaintiffs' reporting time claim has placed the information contained in the[ir] [financial] records at issue." Dkt. 69-1 at 20:16–17, 21:1–2.

Both Named Plaintiffs testified that they did not know what personal activities they engaged in during standby. Dkt. 69-2 at 221–22, 254. As a result, these bank and credit card records are necessary to identify what the Named Plaintiffs were doing while on standby and whether they were "reporting to work," and Plaintiffs' reliance on case law disallowing "irrelevant" or "speculative" discovery is inapposite. Dkt. 69-1 at 21:13–20, 22:2–10. For example, Plaintiffs cite *Zucchella v. Olympusat, Inc.*, CV 19-7335-DSF (PLAx), 2020 Dist. LEXIS 210858 (C.D. Cal. Apr. 1, 2020), where defendants sought six years of financial records based on the allegation that plaintiff had received one illegal kickback payment during a specific month. *Id.* at *12. Even so, the court ordered the production of records during the relevant time period in redacted form. *Id.* at *13–14. *Rodriguez v. Google LLC*, 20-cv-04688-RS (AGT), 2021 U.S. Dist. LEXIS 23834 (N.D. Cal. Feb. 8, 2021), is also distinguishable, as there plaintiffs sought unredacted copies of filings and discovery from a separate irrelevant case.

Plaintiffs assert that these records "will indicate very little about Marathon's degree of control" during standby. Dkt. 69-1 at 21:23–24. But the Named Plaintiffs' bank and credit card records demonstrate, at a minimum, the establishments where they made purchases on particular dates and the locations of these purchases. For example, if the records indicate that the Named Plaintiffs made purchases out of state during the days they were scheduled for standby, such purchases would be highly probative in demonstrating that Plaintiffs were not restricted in their ability to engage in personal activities while on standby. Thus, the Court should compel production of Plaintiffs' bank and credit card records and resolve any privacy concerns through redactions.

DATED: May 23, 2024

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Tiffany Phan

Catherine A. Conway
Jesse A. Cripps
Bradley J. Hamburger
Tiffany Phan
Madeleine f. McKenna

Attorneys for Defendant MARATHON REFINING LOGISTICS SERVICES LLC (erroneously sued as MARATHON REFINING AND LOGISTICS SERVICES LLC)